UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREAT AMERICAN ASSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>JOVITA M. BISHOP, et al.,<br><br>    Defendants. | Case No.18-cv-03630-JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 54 |

Plaintiff Great American Assurance Company filed this action against Jovita M. Bishop and David Bishop d.b.a. Bishop's Care Home seeking a determination that it has no duty to defend or indemnify the Bishops in a state court negligence and wrongful death lawsuit. Great American's motion for partial summary judgment arguing that it is entitled to judgment as a matter of law that it owes no continuing defense or indemnity obligation to Jovita Bishop in the underlying action is now pending before the Court.[1] (Dkt. No. 54.) Having considered the parties' briefs and having had the benefit of oral argument on February 21, 2019, the Court DENIES the motion. Great American has failed to show that as a matter of law all of Ms. Bishop's conduct at issue in the underlying state court action falls within either the criminal act or abuse exclusions of the relevant policy.

**SUMMARY JUDGMENT EVIDENCE**

In 2007, Jovita Bishop and her husband, David Bishop, opened Bishop's Care Home in Rohnert Park, California. (Dkt. No. 60-3 at ¶ 3.) At the time she opened the facility, Ms. Bishop obtained a business insurance package from Great American. (*Id*. at ¶ 6.) In 2014, Marie Giordano became a resident of Bishop's Care Home. (*Id*. at ¶ 13.) Ms. Giordano had Parkinson's

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 6, 10 & 17.)

disease, Alzheimer's and cardiac conditions. (*Id.*) In December 2015, Ms. Bishop's staff alerted her that Ms. Giordano had a skin tear which had developed into a pressure sore. (*Id.* at ¶ 15.) Ms. Bishop instructed her staff to reposition her every few hours and notified Ms. Giordano's son of the pressure sore. (*Id.*) On December 23, 2015, Ms. Giordano was transported to Sutter Regional Hospital for evaluation and was diagnosed with a stage IV pressure sore as well as other sores and admitted to the hospital for treatment. (*Id.* at ¶¶ 19-20.) A week later, Ms. Giordano was discharged from Sutter Regional Hospital and transferred to Creekside Convalescent Hospital. (*Id.* at ¶ 20.) On January 12, 2016, Ms. Giordano died at Creekside Convalescent Hospital. (*Id.* at ¶ 22.)

Six months later, Ms. Giordano's sons filed a complaint against Jovita Bishop doing business as Bishop's Care Home in the Sonoma County Superior Court (the "*Giordano* action"). (Dkt. No. 60-2 at 2 (Ex. A).[2]) The *Giordano* action initially pled five causes of action: (1) neglect; (2) elder abuse; (3) negligence; (4) breach of written contract; and (5) wrongful death.[3] The complaint alleges that Bishop's care home was understaffed and inadequately trained, and that while in Bishop's care Ms. Giordano's condition declined to such an extent that she had to be taken to an acute care facility where she was found to be malnourished and to have pressure sores. (*Id.* at ¶ 13.) The complaint references an attached Coroner's report which indicates that Ms. Giordano's cause of death was "Organizing Bronchopneumonia" with the "Other Significant Conditions [of] multiple decubitus ulcers, dementia, and cirrhosis." (Dkt. No. 60-2 a 22.)

Bishop tendered the defense of the action to Great American. Great American responded by issuing a reservation of rights letter to Ms. Bishop. (Dkt. No. 57 at 275.) The letter accepted tender of defense for the *Giordano* action "under a full and complete reservation of rights…fully and expressly reserve[ing] all of its rights as to indemnity." (*Id.*)

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.)

[3] Ms. Bishop's unopposed request for judicial notice of the complaint filed in the Giordano action is GRANTED. (Dkt. No. 60-1.) *See United States ex. rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.1992) ("we may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.")

2

Six months after Great American accepted the defense of the civil action, a criminal complaint was filed against Ms. Bishop and Lauro Frias Llanda, another staff member at the care facility. (Dkt. No. 55 at 26.[4]) The complaint charged Ms. Bishop and Mr. Llanda with violations of California Penal Code Section 368(b)(1) with enhancements. (*Id*. at 27.) In February 2018, Ms. Bishop pled no contest to a violation of Section 368(b)(1), but not the enhancements. (*Id*. at 30.)

In 2018, the plaintiffs in the *Giordano* action dismissed their causes of action for neglect and elder abuse, but maintained their claims for negligence and wrongful death. (Dkt. No. 60-2 at 30 (Ex. B).)

## PROCEDURAL BACKGROUND

Great American filed this action for declaratory relief against Jovita and David Bishop doing business as Bishop's Care Home. (Dkt. No. 1.) Great American seeks a declaration that it is not required to defend or indemnify the Bishops because it is not obligated to defend or indemnify lawsuits seeking damages arising out of a criminal act or abuse. The Bishops thereafter filed a counterclaim for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief against Great American and their insurance broker NEK Insurance. (Dkt. No. 8.) Great American then filed a motion for partial summary judgment as to its duty to defend and indemnify Ms. Bishop. (Dkt. No. 21.) The Court thereafter granted Ms. Bishop's motion to continue the motion for summary judgment under Federal Rule of Civil Procedure 56(d). (Dkt. No. 454.) Great American then filed the now pending amended motion for partial summary judgment which is fully briefed. (Dkt. Nos. 54 and 60.)

The *Giordano* action was set for trial on March 1, 2019; however, on February 20, 2019, Great American notified the Court that the *Giordano* action had settled in principle. (Dkt. No. 67.)

---

[4] Great American requests that the Court take judicial notice of the complaint in the *Giordano* action, the criminal complaint, Ms. Bishop's "Felony Advisement of Rights, Waiver, and Plea," and a print out of the docket in the criminal case. (Dkt. No. 55.) Judicial notice is appropriate for "undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted). Ms. Bishop has not objected to Great American's request for judicial notice. Accordingly, the Court GRANTS the Request for Judicial Notice as to Exhibits B, C, and D which are part of the public record and easily verifiable. *See* Fed. R. Evid. 201. The copy of the complaint in the *Giordano* action attached to the request for judicial notice does not include all the pages and the Court thus declines to take judicial notice of this version of the complaint.

3

**DISCUSSION**

Great American insists that it does not owe Ms. Bishop a continuing defense or indemnity obligation because of her criminal conviction for felony elder abuse. Ms. Bishop counters that Great American is estopped from enforcing the criminal act or abuse exclusions because it delayed in raising the exclusions and she detrimentally relied on Great American's failure to invoke the exclusions when she entered a no contest plea to the elder abuse offense. In the alternative, Ms. Bishop contends that the Court cannot conclude as a matter of law that the either exclusion applies based on the evidence currently before the Court. Because the Court agrees with Ms. Bishop on this latter question, Great American's motion for summary judgment must be denied.

**A. The Criminal Act and Abuse Exclusions**

"It has long been a fundamental rule of law that an insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to a potential for coverage under the insuring agreement." *Waller v. Truck Ins. Exchange*, 11 Cal.4th 1, 19 (1995). "This duty, [ ] applies even to claims that are groundless, false, or fraudulent, [and] is separate from and broader than the insurer's duty to indemnify." *Id.* (internal citation and quotation marks omitted). "Thus, when a suit against an insured alleges a claim that potentially could subject the insured to liability for covered damages, an insurer must defend unless and until the insurer can demonstrate, by reference to undisputed facts, that the claim cannot be covered. In order to establish a duty to defend, an insured need only establish the existence of a potential for coverage; while to avoid the duty, the insurer must establish the absence of any such potential." *Palp, Inc. v. Williamsburg Nat'l Ins. Co.*, 200 Cal. App. 4th 282, 289 (2011) (internal citation omitted). "However, where there is no possibility of coverage, there is no duty to defend." *Waller*, 11 Cal.4th at 19.

While insurance contracts have special features, "they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the West v. Sup. Ct.*, 2 Cal.4th 1254, 1264 (1992). Generally, "[u]nder statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation" and that intent is to be inferred wherever possible solely from the written contract provisions. *Waller*, 11 Cal.4th at 18

(citing Cal. Civ. Code, §§ 1636, 1639.) "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage', controls judicial interpretation." *Id*. (quoting Cal. Civ. Code §§ 1644, 1638). "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Id*. In interpreting the language of an insurance policy, a court should give the words used their plain and ordinary meaning. *See Giddings v. Indus. Indem. Co*., 112 Cal.App.3d 213, 218 (4th Dist.1980). "Any ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations." *Safeco Ins. Co. of Am. v. Robert S*., 26 Cal. 4th 758, 763 (2001) (internal citation and quotation marks omitted). Likewise, exclusionary clauses in insurance contracts are interpreted narrowly against the insurer and in favor of the insured. *See Arenson v. Nat'l Automobile & Cas. Ins. Co*., 45 Cal.2d 81, 83 (1995).

### 1. Which Policy Governs

Before the Court can address the substance of the exclusions, it must resolve the question of which exclusions apply. Ms. Bishop contends that Great American substantively amended her policy, and in particular, the at-issue professional liability coverage, abuse coverage, and criminal act and abuse exclusions without providing notice and therefore the amended language does not apply.

#### a. The 2007 Policy Language

When Ms. Bishop first obtained her Great American BusinessPro Policy in 2007 she purchased both professional liability coverage and separate abuse coverage. (Dkt. No. 60-4 at 124, 135.) The professional liability coverage was contained in the "Health Care Services Insurance Coverage C" Form CG 78 75. (*Id*. at 124.) As relevant here, the professional liability coverage contains two exclusions: "[d]amages arising directly or indirectly out of…[1] The performance by any insured of a criminal or fraudulent act" or "[2] bodily injury…arising out of the actual, threatened or alleged abuse, molestation, harassment or sexual conduct by any one of any person." (*Id*. at 125 (Sec. I.2.e(3)-(4)).) The separate abuse coverage was provided through "The Abuse or Molestation Coverage Form" which only applied to "'damages' because of any

5

actual, threatened, intentional or unintentional sexual conduct or misconduct, sexual or physical abuse or sexual molestation by anyone, of any person to which this insurance applies." (*Id.* at 135 (Sec.I.1.a).) The 2007 policy did not define the terms "abuse," "physical abuse," "performance," and "damages" as they were used in either the professional liability coverage or the separate abuse coverage.

### b. The 2015 Policy Language

The 2015 Great American BusinessPro Policy which was in effect at the time of incident no longer included the Health Care Services Insurance Coverage C Form CG 78 75. Instead, the professional liability coverage was provided through "Professional Liability Insurance" Form CG 87 10. (Dkt. No. 60-14 at 72 (Duke Depo. at 90:6-23).) The criminal act and abuse exclusion language was also modified as follows:

> **2. Exclusions**
>
> This insurance does not apply to any:
>
> …
>
> b. "Damages" because of any liability arising out of any criminal or fraudulent act committed by or at the direction of the insured. This exclusion applies regardless of:
>
> (1) whether or not the criminal or fraudulent act constitutes a felony, misdemeanor, violation, or any other particular type, grade, or level of offense; and
>
> (2) whether or not the insured is prosecuted for, pleads guilty to, or is convicted of any offense.
>
> …
>
> s. "Damages" because of any liability arising out of "Abuse."

(Dkt. No. 60-5 at 219 (Professional Liability Insurance, Sec. I.2).) The section elsewhere defines "Abuse" in relevant part as "any actual, threatened, or alleged act, error, omission, conduct, or misconduct, that a claim or 'suit' alleges to be, or to constitute, any form of abuse (including but not limited to, elder abuse, child abuse, patient abuse, or abuse of a dependent person) under any applicable state or federal statute or regulation" and "any actual, threatened, or alleged act, error, omission, conduct, or misconduct, of one or more of the following kinds…non-sexual assault, non-sexual battery, or non-sexual abuse, of or directed at a person." (*Id.* at 225 (Sec. VI.1.a-b).)

The language of the additional "Abuse or Molestation Coverage" Form CG 82 83 was also modified to exclude "bodily injury…arising out of…the actual, threatened or alleged abuse, molestation, harassment or sexual conduct by anyone of any person." (Dkt. No. 60-5 at 168.) The Abuse or Molestation Coverage Form also excludes "Damages because of any liability arising out of any criminal or fraudulent act committed by or at the direction of the insured." (Dkt. No. 60-5 at 204 (Sec.I.2.b.).) Abuse has the same definition as it has under the Professional Liability provisions. (*Id*. at 211 (Sec. VI.1.a.).)

### c. The 2007 Policy Language Governs

"[T]he general rule [is] that one who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument." *Madden v. Kaiser Found. Hosps*., 17 Cal. 3d 699, 710 (1976). "Thus, an insured has a duty to read his policy." *Fields v. Blue Shield of Cal*., 163 Cal.App.3d 570, 578 (1985). However, "an insurance company is bound by a greater coverage in an earlier policy when a renewal policy is issued but the insured is not notified of the specific reduction in coverage." *Id.* at 579. To be adequate, notice must be conspicuous, plain, and clear. *Id*.

Ms. Bishop contends that the 2015 policy changes were "huge" because the "Abuse coverage was made so expansive that operators of RCFEs no longer had any professional liability coverage if they were accused of negligence in the care of an elder." (Dkt. No. 60 at 18:5-8.) It is undisputed that Great American did not notify Ms. Bishop (or any other policyholder) when it discontinued use of the Health Care Services Insurance, Coverage C form for professional liability coverage and "incorporated it" into other policy provisions. (Dkt. No. 60-14 at 72 (Duke Depo. 90:1-23).) Nor did Great American provide notice of the changes in the policy language regarding coverage under the separate Abuse or Molestation Coverage Form. (*Id*. at 84:17-86:24.) The question then is whether the changes between 2007 and 2015 were significant enough to require notice. Great American insists that they were not.

While the 2007 Policy excluded damages caused by either the "performance by any insured of a criminal or fraudulent act" or "bodily injury" "arising out of" "actual, threatened or alleged abuse," the 2015 Policy excludes damages "arising out of any criminal or fraudulent act

7

committed by or at the direction of the insured as well as damages because of "any liability arising out of abuse" which is defined to include "elder abuse." *Compare* Dkt. No. 60-4 at 125 (Sec. I.2.e.) *with* Dkt. No. 60-5 at 218 (Sec. I.2.b-s.).) That is, the 2015 Policy explicitly excludes elder abuse from its professional liability coverage whereas the 2007 version excludes coverage for undefined "abuse." Ms. Bishop argues the 2007 Policy is ambiguous as to "abuse"—an ambiguity which the 2015 amendments arguably corrected. Likewise, while the 2007 Policy excludes "criminal acts" generally, the 2015 Policy excludes criminal acts regardless of whether the insured is prosecuted for, pleads guilty to, or is convicted of any offense. Ms. Bishop contends the changes mean that the criminal act exclusion under the 2007 Policy requires proof that the insured actually committed a criminal act while the 2015 Policy does not.

Great American argues the caselaw only requires notice for "elimination of previously-provided coverage" rather than its "rewording of existing exclusions which did not materially change the scope of the exclusions." (Dkt. No. 62 at 19:13-15.) Great American's disavowal of the materiality of its amendments is unpersuasive.[5] Where an insurance company reduces coverage, it is required to provide notice. *Fields*, 163 Cal.App.3d at 579; *Metro. Bus. Mgmt., Inc. v. Allstate Ins. Co.*, 448 F. App'x 677, 678 (9th Cir. 2011); *Allstate Ins. Co. v. Fibus*, 855 F.2d 660, 663 (9th Cir. 1988). As in *Fields*, this includes where the policy is amended to clarify ambiguous language. *Fields*, 163 Cal. App. 3d at 584. In any event, as Great American conceded at oral argument, if the Court concludes that Great American had a duty to defend under the 2007 Policy (or, to be more precise, that it cannot be granted summary judgment that it did not), it does not matter if there is no coverage under the 2015 Policy: if there is coverage under the 2007 Policy but there is no coverage under the 2015 Policy that means that the 2015 amendments were material and Great Amendment was required to give Ms. Bishop notice of the changes. The Court will thus examine Great American's duty to defend under the 2007 Policy.

**2. Whether the Exclusions Bar Coverage**

---

[5] Great American's reliance on the Fourth Circuit Court of Appeal's 1958 decision in *Carva Food Corp. v. Equitable Fire & Marine Ins. Co. of Providence, R. I.*, 261 F.2d 254, 258 (4th Cir. 1958), a case decided under Virginia law, is puzzling as it irrelevant to the question of what is currently required under California law.

8

Generally, a "carrier must defend a suit which [p]otentially seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1966). Because "an insurer has a duty to defend the entire third party action if any claim encompassed within it potentially may be covered," the Court does not look "to whether noncovered acts predominate in the third party's action, but rather to whether there is any potential liability under the policy." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1084 (1993), as modified on denial of reh'g (May 13, 1993). "The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Id.* Any doubt regarding coverage must be resolved in favor of the insured. *CNA Cas. of California v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 607 (1986).

"The defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded or until it has been shown that there is *no* potential for coverage." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993) (internal citations omitted) (emphasis in original). Thus, to prevail in a lawsuit against an insurer alleging a breach of the duty to defend, "the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within the policy coverage; the insurer must prove that it *cannot*." *Id*. at 300 (emphasis in original). "[I]nsurers have a heavy burden when seeking summary judgment on the duty to defend." *Anthem Electronics, Inc. v. Pac. Emp'rs Ins. Co.*, 302 F.3d 1049, 1056 (9th Cir. 2002).

### a. Criminal Act Exclusion

The criminal act exclusion in the 2007 Health Care Services Liability Coverage portion of the Policy applies to "damages arising directly or indirectly out of…[t]he performance by any insured of a criminal or fraudulent act." (Dkt. No. 60-4 at 125 (Sec.I.2.e(3)).) Great American insists that there is no possibility of coverage because the criminal elder abuse statute Ms. Bishop pled no contest to encompasses all the *Giordano* complaint allegations. In other words, all of the damages that the *Giordano* plaintiffs seek arose directly or indirectly from a criminal act

9

performed by Ms. Bishop. The Court disagrees.

The record establishes that Ms. Bishop pled no contest to a violation of California Penal Code § 368(b)(1). That statute states:

> A person who knows or reasonably should know that a person is an elder or dependent adult and who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any elder or dependent adult to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any elder or dependent adult, willfully causes or permits the person or health of the elder or dependent adult to be injured, or willfully causes or permits the elder or dependent adult to be placed in a situation in which his or her person or health is endangered, is punishable by imprisonment in a county jail not exceeding one year, or by a fine not to exceed six thousand dollars ($6,000), or by both that fine and imprisonment, or by imprisonment in the state prison for two, three, or four years.

While it is undisputed that Ms. Bishop pled no contest to a violation of Section 368(b)(1), the record does not identify what conduct Ms. Bishop engaged in that constituted the criminal act; that is, what is it that Ms. Bishop did that violated Penal Code § 368(b)(1)? Without the record being undisputed as to the conduct to which Ms. Bishop admitted, Great American cannot meet its burden of proving that all of the damages sought in *Giordano* action arose from such conduct.

The *Giordano* complaint does not allege that it is seeking damages arising from Ms. Bishop's criminal act. Instead, in making claims for negligence and wrongful death, the *Giordano* complaint alleges: Ms. Bishop "constantly understaffed" the facility, Ms. Bishop "sacrificed MARIE's medical needs in order to save money," "[t]he staff, inexcusably failed to adequately administer and monitor MARIE's medication and handled her roughly and caused unnecessary bruising," and the staff "was not properly trained and oriented regarding the appropriate care levels of their residents and re treating, documenting and reporting the development of pressure sores." (Dkt. No. 60-2 at 2 (Ex. A) at ¶¶ 10, 13.) Great American has no duty to defend only if *all* of these alleged acts are the criminal act to which Ms. Bishop pled no contest and thus fall within the criminal act exclusion. *See Horace Mann Ins. Co.*, 4 Cal.4th at 1081 ("the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy").

Great American argues that because all of the alleged conduct in the *Giordano* complaint could constitute criminal elder abuse under Penal Code section 368(b)(1), all of the damages

10

sought necessarily arose directly or indirectly from the criminal act to which Ms. Bishop pled no contest. Great American's argument fails for two reasons. First, it does not cite anything to support its assertion that, for example, causing the death of a patient by understaffing the care facility—one of the complaint's allegations—constitutes a violation of Penal Code Section 368(b)(1). Second, even if everything alleged in the *Giordano* complaint *could* be a violation of Penal Code section 368(b)(1) under the right circumstances, it is not undisputed on the record before the Court that Ms. Bishop admitted to such criminal conduct. Again, Great American offers no evidence as to the facts underlying Ms. Bishop's no contest plea, that is, the facts that she admitted. All the record shows is that Ms. Bishop pled no contest to a violation of Penal Code Section 368(b)(1) arising from her care of Ms. Giordano. Since Great American has not established what conduct Ms. Bishop admitted to through her no contest plea, it has not established that all of the damages sought in the *Giordano* complaint arise from her criminal act—whatever it may be.

*Horace Mann* is instructive. There, the insurer did not have a duty to defend an action seeking damages resulting from a teacher's sexual molestation of a student. 4 Cal. 4th at 1081-82. The insured pled no contest to sexual molestation of the student and the insurer therefore denied any duty to defend. The California Supreme Court held, however, that because the underlying complaint sought damages for covered nonsexual misconduct, as well as noncovered sexual misconduct, and thus "evinced a possibility that [the insured] would be held liable for damages within the coverage of the policy stemming from [the insured's] nonsexual conduct" with the student, the insurer had a duty to defend. *Id.* at 1083. In particular, the Court observed that the insured's no contest plea established that there had been at least one instance of sexual misconduct outside the policy's coverage, but did not establish that the nonsexual misconduct alleged in the complaint fell outside the policy's coverage. *Id.* Similarly, here, Ms. Bishop's no-contest plea establishes that she engaged in at least one instance of elder abuse in violation of Penal Code section 368(b)(1), but it does not establish that all of the conduct alleged in the *Giordano* complaint is the criminal act to which she pled no contest. Accordingly, because Ms. Bishop is potentially liable for a non-criminal act—namely, conduct sounding in negligence to which she

11

did not plead no contest—Great American has a duty to defend the *Giordano* lawsuit.

The cases upon which Great American relies are inapposite. In *20th Century Insurance Company v. Schurtz*, 92 Cal. App. 4th 1188 (2001), the insured entered the underlying plaintiff's residence and shot at him, grazing his forehead and finger. The plaintiff sued the insured for assault, battery and intentional infliction of emotional distress and the insured subsequently pled no contest to a single felony for assault with a firearm and specifically admitted to personal use of the firearm. *Id.* at 1190. Following the no contest plea, the plaintiff amended the complaint to allege that the insured had negligently brandished the firearm which resulted in its discharge toward the plaintiff. *Id.* The insured policy included an exclusion for injury "which is a foreseeable result of an intentional or criminal act of [the] insured or which is in fact intended by [the] insured." *Id.* at 1191. The court held that there was no duty to indemnify because it was undisputed that the act for which the plaintiff sought damages—the shooting—was a criminal act given that the insured had pled no contest to assault with a firearm. *Id.* at 1196. Here, the *Giordano* complaint seeks damages for Ms. Giordano's physical and mental health deterioration and ultimate death; however, there can be multiple causes for her death and deterioration, some which may be the elder abuse to which she pled no contest (although the record does not identify what act(s) constitute the elder abuse) and some which may be acts which constitute negligence but are not the criminal act to which she pled no contest. This case is thus unlike *Schurtz* where there was only one cause of the injury—the insured's shooting which was indisputedly a criminal act—and more like *Horace Mann* where the student was allegedly damaged by sexual misconduct *and* covered nonsexual misconduct.

*Century-National Insurance Company v. Glenn*, 86 Cal. App. 4th 1392 (2001), similarly involved the same criminal act exclusion as *Schurtz* and a shooting. In particular, the insured pled no contest to felony willful discharge of a firearm arising from his shooting at a group of youths to frighten them. *Id.* at 1394. One of the youths sued the insured for injuries the youth sustained "as a result of the shooting." *Id.* at 1395. As in *Schurtz*, then, it was undisputed that the damages sought in the underlying complaint arose from the admitted criminal act—the shooting. Again, here, in contrast, Great American has not established that all of the mental and physical

12

1  deterioration and ultimately death that Ms. Giordano suffered was a result of the conduct to which
2  Ms. Bishop pled no contest.

At oral argument, Great American insisted that because all of Ms. Bishop's conduct alleged in the complaint *could* constitute elder abuse under Penal Code section 368(b)(1), on summary judgment the Court must treat Ms. Bishop's no contest plea as establishing that all of the damages sought in the *Giordano* action arose from a criminal act. There is much wrong with this argument. First, Great American does not cite anything to support its bald argument that all of the conduct alleged in the complaint could be found to be criminal elder abuse. Second, Great American turns the insurer's duty to defend on its head: whereas under California law the insurer is obligated to defend if the underlying case potentially seeks damages covered by the policy, *see Horace Mann*, 4 Cal. 4th at 1081, Great American posits that there is no duty to defend if the lawsuit seeks damages that are potentially not covered. No caselaw supports Great American's position. To the contrary, "[a]ny doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." *Id.*

Great American has not met its burden of showing that the criminal act exclusion eliminates any potential coverage of the damages sought in the *Giordano* action.

### b. Abuse Exclusion

Great American also contends that it has no duty to defend (and thus indemnify) pursuant to the abuse exclusion. That exclusion bars claims for "damages arising directly or indirectly out of…bodily injury…arising out of the actual, threatened or alleged abuse…by any one of any person." (*Id*. at Sec. 2.e.(4).) As explained above, the 2007 Policy does not define "abuse."

Great American argues: "The Giordanos alleged that Bishop's subpar care caused Giordano to develop bedsores, for which Bishop did not seek timely medical treatment, and which contributed to Giordano's death. These allegations constitute 'abuse' within its "ordinary and popular sense" and since Ms. Bishop pled no contest to felony elder abuse, all of the damages arise out of abuse and are excluded. (Dkt. No. 62 at 15.) Great American has not met its burden of proving application of this exclusion to all of the damages sought by the *Giordano* complaint for the same reason as the criminal act exclusion. Great American does not cite anything to

13

support its proclamation that all of the *Giordano* complaint's alleged conduct constitutes "abuse"; it cannot meet its burden with attorney argument that it is just "common sense." It is not common sense to this Court, in any event, that "subpar care" constitutes felony elder abuse. The Court cannot conclude as a matter of law that all of the conduct alleged in the *Giordano* complaint constitutes "abuse" as used in the 2007 Policy, especially since abuse is nowhere defined.

Great American's reliance on *State Farm Fire & Cas. Co. v. Century Indem. Co*., 59 Cal. App. 4th 648, 662 (1997), as modified on denial of reh'g (Dec. 23, 1997), is unpersuasive. In *State Farm Fire*, three former students sued four teachers and a school district alleging that one of the teachers sexually molested them, and the other defendant teachers failed to report the offending teacher to the proper authorities. *Id*. at 652. The underlying complaint alleged both sexual misconduct and nonsexual conduct arising from the insured's failure to report the allegations of molestation. *Id*. at 661. The court found that unlike in *Horace Mann*, the non-sexual negligent failure to report was not separable from the sexual misconduct. In *Horace Mann*, "the victim sought compensation for damages arising from injury to an interest different from that injured by the molestation." *State Farm*, 59 Cal. App. 4th at 662. In contrast, "the gravamen of [the] alleged negligent failure to report and the alleged molestation is essentially the same: an injury to the minor's interest in protecting and preserving his or her physical integrity from sexual misconduct." *Id*. at 663. In contrast to *State Farm*, here there is more than one injury: mental deterioration, physical deterioration, and ultimately death. Great American has not established as a matter of law that all of these alleged injuries were caused by "abuse" (whatever that means), as opposed to mere negligence covered by the 2007 Policy. Accordingly, Great American has not met its summary judgment burden.

\*\*\*

On summary judgment, "the insured need only show that the underlying claim may fall within policy coverage." *Montrose*, 6 Cal.4th at 300 (emphasis added). The burden then shifts to the insurer to "prove that it does not." *Id*. Because Great American has not established as a matter of law that *all* of the conduct alleged in the *Giordano* action constitutes the criminal act to which Ms. Bishop pled no contest such that the criminal act exclusion would apply or "abuse" within the

14

1  meaning of the abuse exclusion, it has not met its burden of showing no duty to defend Ms.

2  Bishop in the underlying action.[6]

### C. Insurance Code Section 553 Does not Apply

Finally, Great American argues that Insurance Code § 533 excludes coverage because Ms. Bishop pled no contest to a crime requiring a willful act. Under Section 533 "[a]n insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." This provision does not save Great American's summary judgment motion. First, as explained above, Great American has not established all of the *Giordano* complaint allegations are encompassed by Ms. Bishop's no contest plea. Second, Penal Code Section 368(b)(1) covers both intentional and non-intentional conduct and thus Ms. Bishop's no contest plea alone cannot satisfy the willfulness requirement. *See Kerns v. CSE Ins. Grp.*, 106 Cal. App. 4th 368, 395 (2003). Third, Section 533 only applies to the duty to indemnify and not the duty to defend. *See Republic Indem. Co. v. Superior Court*, 224 Cal. App. 3d 492, 497 (Cal. Ct. App. 1990), reh'g denied and opinion modified (Oct. 11, 1990) ("section 533 precludes only indemnification of wilful conduct and not the defense of an action in which such conduct is alleged.").

### D. Estoppel/Waiver

Because Great American has not met its summary judgment burden of proving that the criminal act and/or abuse exclusion eliminated any duty to defend, the Court need not address Ms. Bishop's argument that Great American has waived or is estopped from asserting these exclusions. The Court nonetheless makes two observations. First, any objections to evidence must be made in the parties' motion briefs themselves and not in a separate pleading. *See* N.D. Cal. Civ. L.R. 7-3(c). Second, under California law, implied waiver and estoppel cannot create insurance coverage where

---

[6] Great American did not brief whether it owes a duty to indemnify separate from the duty to defend. Its proposed order on the motion for partial summary judgment only sought a declaration that it did not owe Ms. Bishop a duty to defend. (Dkt. No. 58.) "[T]he duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." *Horace Mann*, 4 Cal. 4th 1076, 1081. "Once the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim." *Id*.

15

none existed in the first instance. *See, e.g., Advanced Network, Inc. v. Peerless Ins. Co.*, 190 Cal. App. 4th 1054, 1066 (2010).

## CONCLUSION

For the reasons stated above, Great American's motion for summary judgment is DENIED. The Court will hold a further case management conference on April 4, 2019 at 1:30 p.m. in Courtroom F, 450 Golden Gate Ave., San Francisco, California. The parties shall file a joint case management conference statement one week in advance.

This Order disposes of Docket Nos. 54, 60, and 64.

**IT IS SO ORDERED.**

Dated: March 11, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge